_____FILED _____ENTERED
_____LODGED _____RECEIVED

JUL 2 8 2008

AT GREENBELT
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY_____DEPUTY

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| TIMOTHY FRANCIS BOOKER, JR. * | |
| * | |
| Petitioner, * | Criminal No. PJM 05-543 |
| * | Civil No. PJM 07-1782 |
| v. * | |
| * | |
| UNITED STATES OF AMERICA * | |
| * | |
| Respondent. * | |

## MEMORANDUM OPINION

*Pro se* Petitioner Timothy Francis Booker, Jr. has filed a Motion to Vacate, Set Aside or Otherwise Correct Sentence pursuant to 28 U.S.C. § 2255, which the Government opposes. For the reasons set forth below, the Court **DENIES** the Motion.

### I.

On April 18, 2006, pursuant to an agreement reached with the Government, Booker pled guilty to possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). The Court ensured that Booker understood the consequences of his plea before finding that it had been given knowingly and voluntarily. Specifically, it first had the Government give an oral summary of the terms of the agreement, including the stipulations that Booker was previously been convicted of three separate violent felonies or serious drug offenses, that consequently he was an Armed Career Criminal under the Armed Career Criminal Act, 18 U.S.C. § 924(e), and that the mandatory minimum sentence for his offense given his criminal history was 180 months imprisonment. When the Court asked Booker if the Government's summary conformed to his understanding of the plea agreement, he answered in the affirmative. It followed this by advising Booker, *inter alia*, that his offense carried a maximum sentence of life imprisonment and that if

he received a sentence he did not like, he could not for that reason withdraw his plea. Booker acknowledged that he understood the proceedings, that no one had threatened or coerced him into agreeing, that no promise had been made to him outside the written agreement, and that he was satisfied with the services of his counsel. At sentencing, the Court sentenced him to 180 months imprisonment and five years of supervised release, the minimum sentence for his offense under 18 U.S.C. § 924(e).

Subsequently Booker filed the instant petition, alleging violations of his Sixth Amendment right to effective assistance of counsel. First, he contends that counsel misled him into pleading guilty, which Booker now claims he never intended to do. He claims that he is unable read and that consequently he was not able to understand his written plea agreement with the Government. He says that his counsel warned him that if he exercised his right to trial, he would receive a life sentence, but that if he pled guilty, a petition for a writ of error *coram nobis* filed after the plea would land him a sentence of no more than five years. Booker also submits that counsel failed to file a petition for *coram nobis* until after sentencing, even though he repeatedly asked counsel to file it earlier. Booker suggests that counsel refused to file the petition for fear that the Government would withdraw its plea agreement. Booker's second claim of denial of effective assistance is that counsel failed to challenge the Court's application of U.S.S.G. § 4B1.4 in determining his sentence. Specifically, he argues that he is not an Armed Career Criminal because he was convicted of two of his three prior felonies on the same day. He also requests an evidentiary hearing regarding these claims.

The Government counters that none of counsel's alleged actions or inactions were ineffective or even unreasonable. The Court agrees with the Government.

## II.

Claims of ineffective assistance of counsel are governed by the two-part test outlined in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires that an individual claiming ineffective assistance demonstrate (1) "that counsel's performance was deficient," and; (2) "that the deficient performance prejudiced the defense." *Id.* at 687. Representation is deficient if it "falls below an objective standard of reasonableness." *Id.* at 690. A showing of prejudice requires "that counsel's errors were so serious as to deprive the defendant of a fair trial whose result is reliable," and that there was a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 690-94. Put differently, "[t]he benchmark of an ineffective assistance claim must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." *Id.* at 686. For counsel's performance to be deficient, it must be shown that his performance was not "within the range of competence normally demanded of attorneys in criminal cases." *Id.* at 687. The standard of review for assessing such competence "must be highly deferential" and "indulge a strong presumption that counsel's conduct falls within the wide range of ineffective assistance of counsel claims." *Id.* at 669.

## III.

Booker's claims that his counsel misled him into pleading guilty and assured him that he would be sentenced to only five years imprisonment are plainly contradicted by the record. During the plea colloquy, Booker listened to a detailed oral summary of the plea agreement, including a statement that "the mandatory minimum sentence is 15 years imprisonment." Plea Colloquy Transcript 6. The summary made clear that no one could make a binding prediction or

promise as to what sentence he would receive and that the Court was not bound to give any particular sentence to him. *Id.* at 8. When the Court asked if the summary conformed to his understanding of the agreement, Booker responded, "Yes, Your Honor." *Id.* at 8-9. When asked if any promise had been made to him outside of the plea agreement, Booker answered, "No, Your Honor." *Id.* at 18. When the Court asked, "Are you pleading guilty because you are guilty and for no other reason?" he answered in the affirmative. *Id.* at 19. When the Court asked if there was anything in the proceeding that he did not understand, he replied, "I understand, Your Honor." *Id.* Finally, when the Court asked if Booker was satisfied with his counsel's services as counsel, he responded, "Yes, Your Honor." *Id.*

"[T]he accuracy and truth of an accused's statements at a Rule 11 proceeding in which his guilty plea is accepted are 'conclusively' established by that proceeding unless and until he makes some reasonable allegation why this should not be so." *Crawford v. United States*, 519 F.2d 347, 350 (4th Cir. 1975). Booker's Motion is a flat out contradiction of his own statements made under oath. He has neither overcome the presumption under *Strickland* that his counsel provided effective assistance nor the presumption under *Crawford* that his own statements at the Rule 11 hearing were accurate.

His argument that his counsel should have filed a petition for a writ of error *coram nobis* in state court before he was sentenced also lacks merit. In the first place, *coram nobis* relief is an "extraordinary" post-conviction remedy to correct errors "of the most fundamental character." *United States v. Morgan*, 346 U.S. 502, 512 (1954). The writ will not issue unless "sound reasons exist for failure to seek appropriate earlier relief." *Id.* It is difficult to imagine on what basis a writ of *coram nobis* might have been granted in favor of Booker, and he has invited the Court's attention to none. Indeed, the *coram nobis* petition that counsel eventually filed was

denied by the state court. Moreover Booker cannot show that the writ would have been granted had the petition been filed earlier, since neither he nor his counsel had any control over how long the state court might take to rule on the petition. In any event, an adverse ruling on a petition for writ of *coram nobis* filed earlier would not have provided Booker with any basis to withdraw his plea in this Court, and an adverse ruling on the petition was what in fact he received. Any argument about the effect that a successful petition for *coram nobis* might have had is therefore purely hypothetical. Counsel's alleged delay in filing a highly doubtful motion in state court did not prejudice Booker in any way.

Finally, Booker cannot show that his counsel was ineffective for failing to challenge his status as an Armed Career Criminal. It bears repeating that Booker stipulated in the plea agreement that he was an Armed Career Criminal, a straightforward classification given his four violent felony convictions— three first degree burglaries and one robbery.[1] But referring to Section 4A1.2(a)(2) of the Sentencing Guidelines, Booker attempts to argue that the three burglaries for which he was arrested on the same day and later sentenced on the same day somehow precluded application of the Armed Career Criminal Act. Apart from the fact that the guideline was amended effective November 1, 2007 and is not retroactive to the time Booker was sentenced (July 7, 2006), the amendment has no relevance to the statute, which exists independently of and trumps the guideline. Section 4A1.2(a)(2) deals with a criminal history

---

[1] The relevant felonies described in the Presentence Report are as follows: (1) First Degree Burglary Dwelling, Prince George's County Circuit Court, sentenced January 20, 1998, Case CT97-1882X; (2) First Degree Burglary Dwelling, Prince George's County Circuit Court, sentenced January 20, 1998, Case CT97-1883X; (3) First Degree Burglary Dwelling, Prince George's County Circuit Court, sentenced January 20, 1998, Case CT97-1884X; and (4) Robbery, Prince George's County Circuit Court, sentenced March 1, 2002, Case CT01-1113X. The arrest for all three of the burglaries took place on August 27, 1997 and concurrent sentencing on January 20, 1998. In all three cases, Booker, then 17 years of age, was waived to the jurisdiction of the adult court.

computation, whereas 18 U.S.C. § 924(e)(1) imposes the 15-year mandatory minimum sentence whenever the individual has three prior convictions for violent felonies committed "on occasions different from one another." There is no provision in the statute, as there is in the guideline, that allows for multiple felonies to be counted as a single felony simply because there was no intervening arrest. Booker's prior burglaries occurred on November 11, 1996, January 3, 1997, and January 6, 1997. These were clearly "separate and distinct" felonies within the meaning of the Armed Career Criminal Act. *See United States v. Letterlough*, 63 F.3d 332, 335 (1995).

### IV.

As for Booker's claim that he is entitled to an evidentiary hearing regarding his counsel's performance, a district court is "not required to conduct an evidentiary exploration of the truth of an allegation in a § 2255 motion which amounted to no more than a bare contradiction of statements made by [the defendant] when he pleaded guilty." *Crawford*, 519 F.2d at 350. Even if Booker's allegations regarding his counsel's performance were valid— and they are not— they would not be sufficient to sustain a § 2255 petition, rendering an evidentiary hearing unnecessary.

### V.

For the foregoing reasons, the Court **DENIES** Petitioner's Motion to Vacate, Set Aside or Otherwise Correct Sentence pursuant to 28 U.S.C. § 2255 in Civil Case No. PJM 07-1782.

A separate order WILL ISSUE.

July 28, 2008

/s/ PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE